UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED RESIN, INC.,

Plaintiff,

v.

JOHN B. LOS, et al.,

Defendants.

Case No. 2:22-cv-10838

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS [18]**

Plaintiff United Resin sued Defendants John B. Los, Linda Lenk, and their "unregistered assumed names" for violation of trade-secret statutes, breach of contract, common law and statutory conversion, trade disparagement, tortious interference, and violation of a criminal computer fraud statute. ECF 15, PgID 418. Defendant Lenk moved to dismiss all nine claims brought against her for failure to state a claim upon which relief could be granted. ECF 18, PgID 762–63. The other Defendants moved to dismiss three claims on the same grounds. *Id.* at 763. The parties fully briefed the motions. ECF 20; 22. For the following reasons, the Court will grant in part and deny in part the motions to dismiss.[1]

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

## BACKGROUND

Plaintiff United Resin formulates, manufactures, and sells adhesive epoxy systems that are used "to meet the needs of aerospace, electronics, automotive, marine[,] and construction industr[ies]." ECF 15, PgID 421. Defendant Lenk was Plaintiff's operations manager until December 2020. *Id.* at 422. She is married to defendant Los. *Id.* at 422. Defendant Los also was Plaintiff's vice president, chief financial officer, chief operating officer, and certified public accountant until January 2021. *Id.* at 421–22. After Defendant Los "voluntarily quit his employment," Defendant Lenk helped him move out of his office. *Id.* at 448–49, 488.

Plaintiff safeguarded the formulas of its epoxy systems. *Id.* at 424. The formulas were confidential and protected by noncompete agreements and trade secret statutes. *Id.* Plaintiff securely stored the formulas on company property, but it also gave Defendant Los an electronic copy to keep in a safe in his house "[i]n case of fire." *Id.* Both Defendant Lenk and Defendant Los worked with Plaintiff's formulas. *Id.* at 422–23. When Defendant Los stopped working for Plaintiff in January, he "delivered to [Plaintiff] a thumb drive/memory stick with the formulas" in April. *Id.* at 472.

In October one of Plaintiff's employees discovered that he was locked out of one of his email accounts. *Id.* at 436. When he regained access to the email account, he found emails between Defendant Los and one of Plaintiff's distributors. *Id.* at 436–37. Plaintiff believed the emails evidenced a conspiracy between Defendant Los, Defendant Lenk, and one of its distributors to misappropriate its formulas and

interfere with its existing contracts. *Id.* at 438. In the end, Plaintiff believed the emails also showed that Defendants violated four State and federal statutes. *Id.*

**LEGAL STANDARD**

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett v. N.C.A.A.*, 528 F.3d 426, 430 (6th Cir. 2008).

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009). Nor may a plaintiff "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. (citation omitted). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and quotation omitted). In other words, the plaintiff must plead

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

In a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.).

**DISCUSSION**

The Court will first address Defendant Lenk's motion to dismiss claims one, two, three, five, six, and seven. The Court will then turn to the Defendants' joint motion to dismiss claims eight and nine, the two interference claims. After, the Court will examine Defendants' joint motion to dismiss claim ten, the computer fraud claim. Last, the Court will determine whether to dismiss Defendant Lenk.

I. Claims One, Two, Three, Five, Six, and Seven

Plaintiff sued Defendant Lenk under State and federal misappropriation of trade-secrets statutes. ECF 15, PgID 492–95. It also sued her for breach of contract, statutory conversion, and common law conversion. *Id.* at 496–98, 503–05. Defendant brought a trade disparagement claim against Lenk as well. *Id.* at 505–06.

Under Michigan's Uniform Trade Secret Act and the Federal Defend Trade Secrets Act a plaintiff must plead that the defendant "disclose[d]" or "use[d]" a misappropriated trade secret. *Planet Bingo, LLC v. VKGS, LLC*, 319 Mich. App. 308,

321–22 (2017); 18 U.S.C. § 1839(5)(B). To prove a Michigan breach of contract claim, a plaintiff must plead (1) the existence of a contract (2) the terms of the contract, (3) *breach* of contract, and (4) that the breach caused his injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). Michigan common law conversion has three elements: "[an] *act of dominion* wrongfully exerted over another's personal property [and] inconsistent with the ownership rights of the other." *Check Reporting Servs., Inc. v. Mich. Nat. Bank*, 191 Mich. App. 614, 626 (1991) (emphasis added). Statutory conversion adds the fourth element that "requires a showing that the defendant *employed* the converted property for some purpose personal to the defendant's interests." *Aroma Wines & Equip, Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 359 (2015) (emphasis added). And to plead a trade-disparagement claim, a plaintiff must show "(1) a false and defamatory *statement* concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either the existence of special harm or defamation per se. *Mitan v. Campbell*, 474 Mich. 21, 24 (2005) (emphasis added).

Put simply, Plaintiff had to show, for every claim, that Defendant Lenk acted in one manner or another. Yet Plaintiff did not allege that Defendant Lenk fulfilled the action elements of claims one, two, three, five, six, or seven. *See* ECF 15. Instead, Plaintiff relied on a theory of conspiracy. *Id.* at 438–49. Plaintiff argued that Defendant Lenk was "an active participant and co-conspirator" in Defendant Los's bad acts. ECF 20, PgID 828 (emphasis omitted). And although Plaintiff pleaded that

Defendants conspired together, it did not bring a conspiracy claim. *See id.* In fact, Plaintiff used conspiracy as a hook to draw Defendant Lenk into its lawsuit against Defendant Los without alleging specific acts in which she may have engaged. As Plaintiff put it, Defendant Lenk is "legally responsible for the acts of Defendant Los, and the statements and acts of Defendant Los can be used against Defendant Lenk" because they conspired together. ECF 15, PgID 438. (alterations omitted). And so, at bottom, the survival of claims one, two, three, five, six, or seven turns on whether Plaintiff pleaded sufficient factual content to support a conclusion of conspiracy. *See Iqbal*, 556 U.S. at 678.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003) (quotation omitted). To plead conspiracy, Plaintiff must offer facts that "support a reasonable inference that two or more persons *planned* or *acted* in concert to accomplish an unlawful end." *Rencsok v. Rencsok*, 46 Mich. App. 250, 252 (1973) (emphasis added). Plaintiff may not assert that Defendants formed a conspiracy with "mere conclusory statements." *Iqbal*, 556 U.S. at 678, 680. For instance, a complaint cannot survive a motion to dismiss if it merely asserts that Defendants "conspired with and aided and abetted each other." ECF 15, PgID 438 (alterations omitted); *see Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8(a)(2).

The facts pleaded in the complaint do not support a reasonable inference that Defendants Los and Lenk planned or acted in concert. Plaintiff's alleged evidence that Defendants conspired together divides into four categories: (1) Defendant Los and a distributor exchanged emails; (2) Defendant Lenk was well-situated and well-suited to aid Defendant Los; (3) Defendants were collegial; and (4) events that occurred on January 8, 2021. *See* ECF 15, PgID 440–49. The Court will address each category in turn.

Plaintiff's first and primary category of evidence—the emails between Defendant Los and a distributor—is insufficient to support a reasonable conclusion of conspiracy. *See* ECF 15, PgID 449–72. Defendant Lenk did not send or receive any of the emails included in the complaint. *See id.* None of the emails named Defendant Lenk. *See id.* Indeed, Plaintiff's longest argument connecting Defendant Lenk to the emails relied on Defendant Los's use of the word "we." *See id.* at 443–46. That attenuated evidence does not reasonably support a claim that Defendant Lenk planned or acted in concert with Defendant Los. It cannot be reasonably inferred that "we" refers in any manner to Defendant Lenk. And the fact that one email was copied to—but apparently never acknowledged by—Defendant Lenk with a request that she "Read [it] First" was not sufficient to support a claim of conspiracy. *Id.* at 441, 451. In short, none of the emails asked her to take an action or stated that she took any action. *See id.* at 449–72. They do not, therefore, reasonably support a conclusion that she planned or acted in concert with Defendant Los.

The second category of evidence—that Defendant Lenk was well-suited and well-situated to aid and abet Defendant Los—is not factual and does not support a reasonable inference that Defendants conspired. Defendant argued "Lenk was an essential party to manufacture competing epoxy products" because "Los was an accountant" who "was not minutely involved in all of the intimate details of day to day manufacturing and production." *Id.* at 447 (alterations omitted). Defendant Lenk, however, "was the person in charge of [] over[seeing] production and manufactur[ing]." *Id.* Defendant argued that because Defendant Los lacked experience in the production and manufacture of epoxies, "[i]t is virtually inconceivable that he would have copied, produced[,] and manufactured competing epoxy products . . . without the aid and assistance of Linda Lenk." *Id.* But Defendant Lenk's expertise and availability evince only that she *could have* or *might have* helped Defendant Los copy, produce, and manufacture competing epoxy. In all, Defendant Lenk's experience and capability is insufficient to support an allegation of conspiracy between Defendants.

The third category of evidence, that Defendants were collegial, likewise cannot support a reasonable inference that they conspired. Plaintiff claimed "[l]iterally all of the employees of [Plaintiff] will attest to the fact that Defendant[] Los and Defendant Lenk were 'joined at the hip.'" *Id.* At its core, Plaintiff's argument here rests on a theory of "guilt by association." But the fact that "Defendants always acted in tandem" in the past does not create a reasonable inference of concerted plans or actions in the present. *Id.* (alterations omitted).

The fourth category of Plaintiff's alleged evidence, the events of January 8, 2021, is insufficient because it does not support a conclusion that Defendant Lenk acted "*to accomplish* an unlawful end." *Rencsok*, 46 Mich. App. at 252 (emphasis added). Plaintiff alleged that Defendant Lenk once "assist[ed] John Los in copying documents and carrying out of the corporate headquarters boxes and materials." ECF 15, PgID 448. But Plaintiff did not allege that Defendant Lenk's actions were intended to accomplish a *planned* unlawful end. *See id.* Plaintiff offered no evidence that Defendant Lenk knowingly acted to achieve any goal whatsoever, much less that Defendant Lenk acted to further a specific unlawful agreement between her and Defendant Los. *See id.* Because Plaintiff did not properly plead a common scheme or plan between Defendants, the pleaded facts do not support a reasonable inference of conspiracy. *See Rencsok*, 46 Mich. App. at 256; *see also Auto Club*, 257 Mich. App. at 384.

At bottom, Plaintiff's four categories of evidence do not support a reasonable inference that Defendant Lenk and Defendant Los conspired. Even when taken all together, the four categories of evidence did not set forth pleadings that Defendant Lenk took or planned any action with Defendant Los. Plaintiff's allegation of conspiracy thus fails. And because liability-by-conspiracy is Plaintiff's only hook to Defendant Lenk in the case, the Court will dismiss claims one, two, three, five, six, and seven against Defendant Lenk.

II. Claims Eight and Nine: Tort Claims

Under Michigan law, a "tortious interference with a contract . . . cause of action [is] distinct from tortious interference with a business relationship or expectancy." *Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275, 279 (2013) (quotation omitted). But the elements of both claims are essentially the same. *See Badiee v. Brighton Area Schs.*, 265 Mich. App. 343, 365–68 (2005). Both claims have four elements: (1) a contract, (2) a breach, (3) an unjustified instigation of the breach by the defendant, and (4) damages. *See Total Quality, Inc. v. Fewless*, 332 Mich. App. 681, 704–05 (2020) (citation omitted).

The motion to dismiss here hinges on resolution of the third element. *See* ECF 18, PgID 778–80; ECF 20, PgID 830–32. To establish it, Plaintiff must show that Defendants committed "a per se wrongful act or committed a lawful act with malice and without justification for the purpose of invading the contractual rights or business relationship of another." *Urb. Assocs., Inc. v. Standex Elecs., Inc.*, 216 F. App'x 495, 514 (6th Cir. 2007) (cleaned up). "A per se wrongful act is one that is inherently wrongful or an act that can never be justified under any circumstances." *Id.* (cleaned up). But actions "motivated by legitimate business reasons" are not per se wrongful. *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 442 (6th Cir. 2014). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Knight Enters.*, 299 Mich. App. at 280 (quotation omitted). "The essential thing is the

purpose to cause the result. If the actor does not have this purpose, his conduct does not subject him to liability" *Id.* at 281 (quotation omitted).

The amended complaint did not plead facts sufficient to support a reasonable inference that Defendants' actions were either per se wrongful or done for an unlawful purpose. Indeed, the pleaded facts suggest the opposite conclusion.

Plaintiff alleged that Defendants' "instigation of the breach of [the distributor's] business relationship . . . is illegal and contrary to law." ECF 15, PgID 507–08. But no facts were stated in the amended complaint to suggest per se wrongful conduct. *See* ECF 15. On the contrary, the complaint contained facts that implied Defendant Los's conduct was driven by legitimate business motivations. For example, the email evidence in the amended complaint contradicted Plaintiff's tort claim. *See id.* at 450–72. Defendant Los's first email to the distributor expressed hope that "this is the start of something that is mutually beneficial." *Id.* at 451. In the next email, the distributor wrote that she and a coworker "already gossiped that [Plaintiff] might be in [a] problem" because of price hikes. *Id.* at 452. The distributor concluded the email with, "I'm sure if you can promise the quality, this cooperation will be mutually beneficial." *Id.* In another email, Defendant Los celebrated that "I feel . . . I can get good people and produce quality products like I did when I was [working for Plaintiff]." *Id.* at 465. The emails create a reasonable inference that Defendant Los wanted to provide better, cheaper, and faster services—not necessarily that he and Lenk were agreeing to illegally breach a relationship. *See id.* at 450–72.

The emails also undermine Plaintiff's assertion that Defendants instigated the breach. The emails show that the distributor was unhappy with Plaintiff's services. *See id.* at 454 ("I have to ask you because [Plaintiff's employees] are too slow."), 457 ("[W]e don't want to cooperate with [Plaintiff] in the future. . . . [W]e hope the transfer can be faster."), 459 ("[W]e hope to cooperate with you rather than [Plaintiff]. There are many problems inside them."), 464 ("[Plaintiff] definitely [has] a problem in production. The lead time is super super slow and always delayed. . . . We truly hope you can succeed in manufacturing."). At bottom, Plaintiff argued that Defendants interfered with a business relationship because they poached the distributor's business when they provided better, cheaper, and faster services than Plaintiff. *See id.* at 454–64. But poaching contracts and business relationships by providing a better product is not a tort. It is business. *See Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 520 (6th Cir. 2013) (rejecting the plaintiff's tortious interference claim and holding that Defendant's actions, offering "extend[ed] warranty program[s] or . . . the replacement of parts," "is the very essence of competition").

Moreover, even if Plaintiff pleaded facts that demonstrated Defendants instigated a breach, the facts do not support a reasonable inference that Defendants acted *for the purpose* of invading Plaintiff's contract rights or business relationships. *See* ECF 15. The evidence alleged simply states that Defendants acted for the purpose of expanding their business by providing superior services. *See id.* at 450–72. Defendants were "motivated by legitimate business reasons" and thus did not

intentionally and tortiously interfere with Plaintiff's contracts or business relationships. *See Saab Auto.*, 770 F.3d at 442. Plaintiff's tortious interference claims against both Defendants therefore fail to survive the 12(b)(6) pleading standard. *See* Fed. R. Civ. P. 12(b)(6).

Even if Plaintiff pleaded facts that demonstrated Defendant Los instigated a breach for the purpose of invading Plaintiff's rights, its claims against Defendant Lenk would still fail. Plaintiff did not allege that Defendant Lenk interfered with its contracts or business relations. *See* ECF 15. Instead, Plaintiff relied on a theory of conspiracy. *Id.* at 438–49. Plaintiff argued that Defendant Lenk was "an active participant and co-conspirator" in Defendant Los's tortious interference. ECF 20, PgID 828 (emphasis omitted). Plaintiff claimed the Defendants' conspiracy thus made Defendant Lenk legally responsible for Defendant Los's tortious acts. *See* ECF 15, PgID 438. Plaintiff thus asserted the existence of a conspiracy between the Defendants even though it did not bring a conspiracy claim. Defendants' conspiracy, Plaintiff contended, allowed the Court to hold Defendant Lenk liable for Defendant Los's tortious acts. Survival of claims eight and nine against Defendant Lenk thus turns on whether Plaintiff pleaded sufficient factual content to support a conclusion of conspiracy. *See Iqbal*, 556 U.S. at 678.

Plaintiff alleged that Defendant Los induced one of its distributors to breach a contract. *See* ECF 15, PgID 507–08. Plaintiff argued "[t]he emails between [Defendant] Los and [the distributor] reflect that [the distributor] has and/or will be terminating business or commercial relationships with [Plaintiff]." *Id.* at 507. But a

tortious interference of contract or business relations claim requires Plaintiff to show that Defendant *intentionally* interfered and "induc[ed] or caus[ed] a breach or termination of the relationship or expectancy." *Total Quality, Inc.*, 332 Mich. App. at 705 (citation omitted). While Plaintiff alleged that Defendant Los induced the distributor to breach its contract with Plaintiff, ECF 15, PgID 507–08, Plaintiff alleged no facts that Defendant Lenk planned or acted to induce or cause a breach of the distributor's contract. *See id.* Thus, claims eight and nine fail as to Defendant Lenk because Plaintiff did not adequately plead that Defendant Lenk conspired to tortiously interfere in Plaintiff's contracts or business relationships.

The Court will dismiss both tort claims against both Defendants because the pleaded facts do not support a reasonable inference that Defendant Los induced the distributor to breach for the purpose of invading Plaintiff's rights, and the facts do not support a conspiracy between Defendant Lenk and Los.

III.  Claim Ten: Computer Fraud and Abuse Act

The amended complaint contains sufficient factual content to support a reasonable inference of Plaintiff's last claim—computer fraud under 18 U.S.C. § 1030. The Court will deny Defendant Los's motion to dismiss on that ground. But the Court will nevertheless grant Defendant Lenk's motion to dismiss the computer fraud claim because Plaintiff did not adequately allege the existence of a conspiracy between Defendants.

The Computer Fraud and Abuse Act (CFAA) created a cause of action for "[a]ny person who suffers damage or loss by reason of a violation of this section." 18 U.S.C.

§ 1030(g). To violate § 1030 a party must "hav[e] knowingly accessed a computer without authorization or exceed[ed] authorized access." § 1030(a)(1). Section 1030 defines a computer as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includ[ing] any data storage facility or *communications facility* directly related to or operating in conjunction with such device." § 1030(e)(1) (emphasis added). "Communications facility" is not defined under 18 U.S.C. §§ 1–6005. But 21 U.S.C. § 843(b) defines "communications facility" as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication."

Plaintiff alleged that Defendants "in violation of 18 U.S.C. § 1030 [] signed into [an email] account," "hacked into an email account," and "illegally hacked [Plaintiff's] AOL business account." ECF 15, PgID 436, 441, 490. And Defendants argued that Plaintiff did not adequately allege that Defendants accessed a computer. ECF 18, PgID 781–84. Plaintiff's CFAA claim thus depends on whether an email account is a "computer" within the definition of § 1030. Neither party supported their definition of "computer" with any binding precedent, and the Court's research did not reveal any binding cases about whether a web-based email account is a "computer" for purposes of § 1030. Both parties buttressed their arguments with findings of other district courts. ECF 18, PgID 781–84; ECF 20, PgID 832–37. And while some courts have held that web-based email accounts are computers, s*ee Abu v. Dickson*, No. 20-

10747, 2021 WL 1087442, at *5 (E.D. Mich. Mar. 22, 2021) (collecting cases), others have found that "the CFAA is aimed at unauthorized access to computers, not unauthorized access to web-based accounts." *Christie v. Nat'l Inst. for Newman Stud.*, No. 16-6572, 2019 WL 1916204, at *6 (D.N.J. Apr. 30, 2019) (internal quotation marks and quotation omitted) (collecting cases). The Court agrees that web-based email accounts are computers because of how broadly the phrase "communications facility"—although undefined in Title 18—is defined in other titles. *See* 21 U.S.C. § 843(b) ("[*A*]*ny and all* public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, *and all other means of communication*.") (emphasis added). Because the same phrase is used in both titles and Title 21 defines the phrase broad enough to include a web-based email account, the Court will deny Defendant Los's motion to dismiss claim ten.

The Court will nevertheless grant Defendant Lenk's motion to dismiss claim ten because Plaintiff failed to adequately allege the existence of a conspiracy between Defendants. As explained above, Plaintiff did not allege that Defendant Lenk accessed Plaintiff's computer. *See* ECF 15. Instead, Plaintiff pleaded that Defendant Los accessed one of its computers and that Defendant Lenk should be liable under CFAA because she broadly conspired with Defendant Los. *See id.* at 509–510. Only Plaintiff's putative conspiracy argument links Defendant Lenk to Plaintiff's CFAA claim.

A plaintiff is liable under § 1030(a)(1) if she "knowingly accessed a [protected] computer without authorization or exceed[ed] authorized access." Plaintiff alleged that Defendant Los "hacked into an e-mail account that belonged to [Plaintiff]" ECF 15, PgID 441. Plaintiff offered emails Defendant Los allegedly sent from the email account as proof. *See id.* at 450–72. But to plead a conspiracy between Defendant Lenk and Los Plaintiff must plead that Defendant Lenk "planned or acted in concert" with Defendant Los "to accomplish" the hacking. *Rencsok*, 46 Mich. App. at 252.

Plaintiff did not plead that Defendant Lenk planned or acted in a manner that would lead the Court to the reasonable inference that Defendant Lenk conspired with Defendant Los. *See* ECF 15. None of the emails between Defendant Los and the distributor were sent or received by Defendant Lenk. *See id.* 450–72. And Defendant presented no other evidence that Defendant Lenk planned or acted to further a conspiracy between Defendants. At bottom, Plaintiff failed to allege facts sufficient to reasonably infer that Defendant Lenk conspired with Defendant Los. The Court will therefore grant Defendant Lenk's motion to dismiss count ten.

**CONCLUSION**

Plaintiff's second amended complaint alleged that Defendant Lenk was civilly liable because she acted in concert with Defendant Los. But the Court will grant Defendant Lenk's motion to dismiss all claims against her because Plaintiff failed to allege sufficient facts to support a reasonable inference of conspiracy between Defendants. Because no claims remain against Defendant Lenk, the Court will dismiss her from the case with prejudice. The Court will also grant Defendant Los's

motion to dismiss claims eight and nine since the complaint does not support a reasonable inference that he illegally or maliciously interfered with Plaintiff's contracts or business relations. Last, the Court will deny Defendant Los's motion to dismiss claim ten because Plaintiff adequately pleaded a claim for a violation of the CFAA.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [18] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that all claims against Defendant Lenk are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant Lenk **is DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that claims eight and nine are **DISMISSED** as to Defendant Los.

**IT IS FURTHER ORDERED** that Defendant Los's motion to dismiss as to claim ten is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 16, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 16, 2022, by electronic and/or ordinary mail.

                                              s/ David Parker
                                              Case Manager